*1119
 
 OPINION
 

 Per Curiam:
 

 On May 3, 1996, Dr. Paul Debello was shot at his Las Vegas clinic. Based on Dr. Debello’s photo-identification of appellant Robert Eric Brown as his assailant, along with eyewitness identification of the assailant’s vehicle that belonged to Brown’s friend and was reported stolen on the day of the shooting, Brown was arrested for committing the crime. At the conclusion of his trial, the jury returned verdicts of guilty on all counts.
 

 On appeal, Brown argues that the district court abused its discretion in denying his motion to sever two counts of possession of a firearm by an ex-felon, and that prejudicial error was committed when the clerk of the court read the Amended Information in open court at the beginning of trial, thereby inadvertently exposing the jury to evidence of his prior convictions.
 
 [1]
 
 For the reasons
 
 *1120
 
 set forth below, we reject Brown’s arguments and affirm his conviction and sentence.
 

 FACTS
 

 On the evening of May 3, 1996, Dr. Debello and his new employee Lisa Carollo were working late at Dr. Debello’s Las Vegas clinic. Carollo, whose job responsibilities included collecting and counting all cash deposits that came into the clinic, had been Dr. Debello’s employee for approximately three weeks. Business throughout the day had been heavy and there was an unusually large amount of cash on the clinic’s premises (approximately $6000.00). Although Carollo routinely left work at 4:00 p.m. because she lived ninety miles away in Mesquite, she stayed late on the evening of May 3, 1996, for the ostensible purpose of discussing “clinic business” with Dr. Debello.
 

 At approximately 7:20 p.m., after discussing work-related matters, Dr. Debello realized that he had forgotten to give Carollo a key to the clinic. Accordingly, the two walked to the clinic’s front entry way to ensure that the key was operational. Carollo stepped outside and Dr. Debello locked the door behind her; when Carollo opened the door with the key, a man appeared behind her and started to push Carollo through the door. Neither Carollo nor the man said anything.
 

 For approximately fifteen seconds, Dr. Debello and the man engaged in a struggle in the clinic’s entry way, during which Dr. Debello was able to acquire a good look at the man’s face. At one point during the struggle, the man was able to turn Dr. Debello around at which time Dr. Debello heard two powerful gunshot blasts. The first shot narrowly missed Dr. Debello but the attendant shock wave shattered his eardrum; the second shot hit Dr. Debello in his side, severely wounding him. The man then ran away from the building and drove away in a dark-blue Japanese import. While lying wounded in the clinic’s doorway, Dr. Debello saw that the man was dressed in a dark-colored or black jogging suit.
 

 Paramedics arrived within five minutes and transported Dr. Debello to University Medical Center for emergency treatment. Although Dr. Debello survived the attack, he was permanently paralyzed from the waist down as a result of the shooting. At the crime scene, police found a bullet fragment in the clinic’s wall and a purple bag embossed with the words “Crown Royal.”
 

 Several eyewitnesses to the shooting also heard two gunshots
 
 *1121
 
 and described the assailant as an African-American man in his thirties, approximately six feet tall and 200 pounds in weight, with black hair, brown eyes, and wearing a dark-colored jogging suit with a black cap. Two other eyewitnesses described the assailant in a similar fashion noting that the man fled in a dark-blue Japanese import bearing Nevada license plate number “811 FMC.”
 

 Based on the description of the assailant’s vehicle and its license plate number, LVMPD detectives conducted a search of DMV records and learned that license plate number “811 FMC” belonged to a vehicle in Reno. After checking this vehicle and determining that the assailant in Las Vegas could not possibly have used this vehicle, detectives considered the possibility that the eyewitnesses had transposed the license plate’s lettering or numbers.
 

 LVMPD detectives next tried a variety of different license plate number combinations. In running a search on Nevada license number “811 FNC,” the detectives learned that a vehicle bearing this license plate number had been reported stolen by its owner Michelle Cruppi (Cruppi) in Mesquite on the night that Dr. Debello was shot.
 

 LVMPD Det. Buczek then contacted the Mesquite Police Department to acquire additional information about the theft of the vehicle. Mesquite Police Officer Kenneth Hilley informed Det. Buczek that on the morning of May 4, 1996, he responded to Cruppi’s apartment to investigate a stolen vehicle report. Cruppi informed Officer Hilley that on May 3rd, a friend had given her a ride to work at approximately 3:00 p.m. because her vehicle had a fuel filter problem. When she returned home from work at approximately 12:30 a.m., her vehicle was gone.
 

 Det. Buczek then informed Officer Hilley of the circumstances surrounding Dr. Debello’s shooting. Det. Buczek provided Officer Hilley with descriptions of Dr. Debello’s assailant and the vehicle in which he fled the scene. During their conversation, Officer Hilley informed Det. Buczek that an individual from Mesquite, appellant Brown, appeared to fit the description of Dr. Debello’s assailant.
 

 Based on information that Cruppi’s vehicle may have been involved in Dr. Debello’s shooting, detectives from the Mesquite Police Department returned to Cruppi’s apartment on May 5, 1996. During a second interview, detectives learned that Cruppi and Brown were acquaintances. Further, in contrast to her previous written statement in which she alleged that her vehicle was stolen, Cruppi changed her story and informed the police that Brown had borrowed her car on May 3, 1996. Additionally, Cruppi informed the detectives that Brown had told her to contact the police and report that her vehicle was stolen.
 

 
 *1122
 
 On May 5, 1996, after Dr. Debello’s condition had stabilized, Det. Buczek went to University Medical Center to show Dr. Debello a photo lineup. Upon seeing the photo lineup, Dr. Debello immediately identified Brown as the assailant. Based on Dr. Debello’s identification of Brown, and in light of information obtained from Cruppi, LVMPD officers and officers from the Mesquite Police Department executed a search warrant at Brown’s Mesquite apartment on the evening of May 5, 1996. Brown’s girlfriend, who shared the apartment with him, allowed the officers access into the apartment where they found Brown in the bedroom. Inside Brown’s bedroom closet, police found a .44 magnum revolver, a dark-colored running jacket, and a bag embossed with the words “Crown Royal” containing drug paraphernalia consisting of syringes, scales, needles, and a pipe. The Crown Royal bag was identical to the Crown Royal bag that police had found at the crime scene. The .44 revolver, which had a six-shot capacity, contained only four rounds. Further, on a small table next to Brown’s bed, police found a piece of paper with the name “Lisa Carollo” written on it. At the conclusion of the search, Brown was arrested.
 

 On May 11, 1996, Cruppi’s vehicle bearing Nevada license plate number “811 FNC” was recovered in the parking lot of a North Las Vegas apartment complex approximately five miles from Dr. Debello’s clinic. Inside the vehicle’s glove box police found .44 magnum ammunition, which corresponded to the .44 magnum revolver found in Brown’s closet. Additionally, Brown’s fingerprints were found inside the car.
 

 In addition to charging Brown with burglary, attempted robbery, battery, and attempted murder, all with the use of a deadly weapon, the State charged Brown with two counts of possession of a firearm by an ex-felon. On August 23, 1996, Brown filed a proper person motion to sever the two counts of possession of a firearm by an ex-felon, arguing that the issue concerning his ex-felon status and alleged possession of a firearm would not be cross-admissible at trial on the remaining counts. Although the district court acknowledged some prejudice to Brown in trying all of the counts together, it denied Brown’s motion.
 

 The State’s Amended Information, which it filed on August 14, 1996, contained the clear admonition that “under no circumstances [is] the language [concerning Brown’s prior convictions for aggravated robbery and aggravated assault] to be read to a jury hearing the primary offense for which the defendant is presently charged.” In an oversight and in spite of this admonition, the clerk of the court — following routine procedures — read the Amended Information to the jury in open court at the beginning of trial.
 

 
 *1123
 
 Although as a result of the clerk’s actions the jury was inadvertently apprised of Brown’s prior felony convictions in 1986 and 1993 for aggravated robbery and aggravated assault, Brown failed to timely object to the reading of the Amended Information.
 
 [2]
 
 Defense counsel first raised the issue of the clerk’s reading of the Amended Information with the district court two days later during trial. While the district court indicated that Brown had failed to request that his prior felonies be deleted from the Amended Information and had failed to object at the time the Amended Information was read, the district court offered to provide a limiting instruction to the jury upon Brown’s request.
 

 At trial, Dr. Debello took the stand and described the events surrounding his shooting and his subsequent photo identification of Brown during his recovery in the hospital. While testifying, Dr. Debello positively identified Brown as the assailant who had shot and paralyzed him.
 

 Brown then took the stand to refute the charges against him. During his direct examination, Brown discussed the circumstances surrounding his 1986 aggravated robbery conviction in Colorado and his 1993 aggravated assault conviction in Utah. Although Brown testified that he was good friends with Dr. Debello’s employee Lisa Carollo and that he had called her at the clinic four times on the day that Dr. Debello was shot, he denied any involvement in Dr. Debello’s shooting.
 

 At the conclusion of trial, the jury returned a verdict of guilty on all counts. Accordingly, the district court sentenced Brown to 72 to 180 months in prison for burglary, two consecutive terms of 48 to 120 months for attempted robbery, two consecutive terms of 96 to 240 months for attempted murder, and 24 to 72 months on two counts of possession of a firearm by an ex-felon.
 

 Brown now appeals.
 

 
 *1124
 

 DISCUSSION
 

 The district court did not abuse its discretion in denying appellant ’s motion to sever the counts of being an ex-felon in possession of a firearm from the remaining counts
 

 While acknowledging that “there might be a problem with the rights of the defendant,” the district court denied Brown’s proper person motion to sever the two counts of possession of a firearm by an ex-felon from the remaining counts. On appeal, Brown argues that the district court abused its discretion in denying his motion to sever Counts V and VI from the Amended Information because Count V (possession of the firearm found in his bedroom closet) did not stem from the same transaction as Counts I through IV, and because he was unduly prejudiced by the joinder of Count VI (possession of the firearm at the clinic). We disagree.
 

 The joinder of offenses is proper where the activity charged is part of the same transaction or comprises a common scheme or plan. Gibson v. State, 96 Nev. 48, 51, 604 P.2d 814, 816 (1980). The decision to sever offenses is left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. Robins v. State, 106 Nev. 611, 619, 798 P.2d 558, 553 (1990). On appeal, errors resulting from misjoinder will be reversed “only if the error has a ‘substantial and injurious effect or influence in determining the jury’s verdict.’”
 
 Id.
 
 (quoting United States v. Lane, 474 U.S. 438, 450 (1985)).
 
 See also
 
 NRS 173.115
 
 [3]
 
 and NRS 174.165(1).
 
 [4]
 

 In the instant case, we conclude that the district court did not abuse its discretion in denying Brown’s motion to sever Counts V and VI. Based on our review of the record, we conclude that Count V, stemming from the police’s discovery of the firearm in Brown’s bedroom closet, was intricately related to Counts I-IV
 
 *1125
 
 because substantial evidence suggested that this was the weapon that the assailant used to severely wound Dr. Debello. Specifically, eyewitnesses to Dr. Debello’s shooting heard two gunshots; the six-shot revolver found in Brown’s bedroom closet contained only four rounds. Further, the ammunition found in the vehicle in which the assailant fled the crime scene matched the ammunition found in the weapon discovered in Brown’s bedroom closet. Additionally, the criminal conduct underlying Count V occurred within a relatively short time span — within forty-eight hours — after Dr. Debello’s shooting. Lastly, Dr. Debello positively identified Brown as the individual who shot him. Accordingly, the district court did not abuse its discretion in denying Brown’s motion to sever Count V.
 

 With respect to the joinder of Count VI (possession of the firearm during Dr. Debello’s shooting at the clinic), even Brown concedes that the joinder of this Count with Counts I-IV is technically permissible because the conduct underlying Counts I-IV and VI constituted part of the same transaction. While Brown asserts that he was unduly prejudiced by joinder of Count VI, based on our review of the record which manifests overwhelming evidence of Brown’s guilt, we cannot conclude that the district court’s denial of Brown’s motion to sever Count VI had a substantial effect on the jury’s verdict. Accordingly, because of the intricate connection between Counts I-IV and Count VI, along with overwhelming evidence of Brown’s guilt, the district court did not abuse its discretion in denying Brown’s motion to sever this Count.
 

 In a related argument, Brown asserts that the district court erred in allowing Counts V and VI to be read to the jury because in so doing, the jury was exposed to evidence of Brown’s prior convictions for aggravated robbery and aggravated assault. Significantly, we note that Brown failed either to request that his prior felonies be deleted from the Amended Information, or to enter a timely objection when the clerk of the court read the Amended Information in open court.
 

 It is well established that “failure to object to asserted errors at trial will bar review of an issue on appeal.” McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983). Although we may address plain error and constitutional error
 
 sua sponte, see
 
 Sterling v. State, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992), we are not persuaded that Brown’s assignment of error either constitutes plain error or is of constitutional dimension. Accordingly, we decline to consider Brown’s additional assignment of error
 
 *1126
 
 because he has failed to properly preserve this issue for our review.
 

 Notwithstanding our conclusion that Brown’s failure to preserve this issue precludes our review on appeal, we now take this opportunity to clarify an important procedural issue for the benefit of the bench and bar. In a multi-count indictment, where one of the counts is a charge of possession of a firearm by an ex-felon pursuant to NRS 202.360, the State must generally introduce evidence of a defendant’s prior felony convictions in order to establish the elements of a violation of NRS 202.360 beyond a reasonable doubt. Concomitantly, the State’s introduction of a defendant’s prior felony convictions exposes the defendant to prejudice. We recognize that institutional values such as judicial economy, efficiency, and fairness to criminal defendants often raise competing demands. Although the joinder of all feasible counts in one trial no doubt maximizes scarce judicial and public resources, we cannot allow such joinder when fairness is compromised. Accordingly, to ensure fairness in those future cases where the State seeks convictions on multiple counts, including a count of possession of a firearm by an ex-felon pursuant to NRS 202.360, we now hold that severance of counts pursuant to NRS 202.360 is required.
 

 CONCLUSION
 

 We conclude that the district court did not abuse its discretion in denying Brown’s motion to sever Counts V and VI because the criminal conduct underlying these counts constituted part of the same transaction as Counts I-IV and because we are not persuaded that joinder in this instance had a substantial or injurious effect on the jury’s verdict. However, to ensure fairness, we hold that severance of counts pursuant to NRS 202.360 is required in those future cases where the State seeks convictions on multiple counts.
 

 Based on the foregoing, we affirm Brown’s conviction and sentence.
 

 [1]
 

 Brown also asserts that the evidence adduced at trial was insufficient to support his conviction of attempted robbery and possession of a firearm by an ex-felon. Further, Brown argues that the prosecutor twice committed misconduct during closing argument by referring to his prior convictions, and by stating that Brown could no longer be presumed innocent in light of the evidence against him. Lastly, Brown argues that the district court improperly admitted evidence of drug paraphernalia that police discovered in his bedroom
 
 *1120
 
 closet during their search of his apartment. After hearing oral arguments on the matter, and based on a careful review of the record on appeal and the briefs filed herein, we conclude that Brown’s additional arguments are without merit.
 

 [2]
 

 In relevant part, the Amended Information provided:
 

 Count Five, possession of [a] firearm by a [sic] ex-felon. Defendant on or about May 5, 1996, did then and there willfully, unlawfully, and feloniously own or have in his possession or under his control a weapon, to wit: a Ruger Redhawk .44 magnum revolver . . . the said Robert Eric Brown, being an ex-felon, having in 1986 been convicted of aggravated robbery, a felony under the laws of the State of Colorado, and having in 1993 been convicted of aggravated assault, a felony under the laws of the State of Utah.
 

 Count Six, possession of [a] firearm by [an] ex-felon. Defendant on or about May 3rd, 1996, did then and there willfully, unlawfully, and feloniously own or have in his possession or under his control a weapon, to wit: a pistol. This said Robert Eric Brown, being an ex-felon having in 1986, being convicted of aggravated robbery, a felony, under the laws of the State of Colorado, and having in 1993 been convicted of aggravated assault, a felony under the laws of the State of Utah.
 

 [3]
 

 NRS 173.115 provides:
 

 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are:
 

 1. Based on the same act or transaction; or
 

 2. Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
 

 [4]
 

 NRS 174.165(1) provides:
 

 If it appears that a defendant or the State of Nevada is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.