OPINION
 

 By the Court,
 

 Maupin, J.:
 

 In this opinion, we consider the propriety of bifurcating criminal trials where the State, in the indictment or criminal information, joins a charge of unlawful possession of a firearm by an ex-felon with other substantive criminal violations. We conclude that the district court may resort to bifurcation in such instances, rather than complete severance. In this, we expand our ruling in
 
 Brown v. State.
 

 [1]
 

 We also consider claims concerning the exclusion of alibi evidence, as well as claims of prosecutorial misconduct in final argument. For the reasons stated below, we reverse and remand for a new trial.
 

 FACTS AND PROCEDURAL HISTORY
 

 Las Vegas Metropolitan Police arrested Paul Anthony Morales in connection with separate incidents involving early-morning robberies/burglaries at two Las Vegas taverns. More particularly, investigators alleged that, on February 26, 2004, Morales and a co-conspirator entered an establishment known as the Rum Runner Lounge and robbed its sole occupants — bartender Michael Eidson
 
 [2]
 
 and patron Joan Taylor Norman — at gunpoint; and that, on March 9, 2004, Morales alone entered another tavern, Davey’s Locker Bar, and robbed the sole occupant — bartender William Fierch — also at gunpoint.
 

 There was very little evidence tying Morales to the robberies, and two of the identifications were less than definitive. Norman was initially uncertain of her identification of Morales and stated in
 
 *969
 
 a voluntary statement that she was unable to identify the suspect because she did not see his entire face. Fierch was also uncertain in his initial identification of the suspect, selecting someone other than Morales in the first of two photo line-ups.
 

 The State tried Morales on three charges of robbery with the use of a deadly weapon, two charges of burglary while in possession of a firearm, one charge of conspiracy to commit robbery, and two charges of possession of a firearm by an ex-felon. To prevent jury exposure to Morales’s ex-felon status, the district court ordered bifurcation of the trial so that the members of the jury would only hear and determine the separate firearms charges if they first found Morales guilty of the burglary and robbery charges implicating the use of a deadly weapon.
 

 At the end of the first phase of the trial, the jury rendered guilty verdicts on the robbery, burglary and conspiracy charges. The district court then instructed the jury that it was to determine whether Morales was guilty on the two counts alleging possession of a firearm by an ex-felon. Because the verdicts in the first phase of the trial amounted to findings that Morales possessed a firearm during both incidents, the district court also advised the jury that it need only determine whether he was an ex-felon in the second phase. At this suggestion, the State introduced certified copies of three prior judgments of conviction sustained by Morales. The district court then read six additional jury instructions, one of which informed the jury of the legal elements of the firearm possession charges. Upon further deliberations, the jury found Morales guilty on both counts.
 

 The district court adjudicated Morales as a habitual criminal under NRS 207.010, imposing a series of concurrent and consecutive sentences ranging from one year to four years imprisonment for possession of a firearm by an ex-felon, to ten years to life with the possibility of parole on the robbery charges. Morales appeals.
 

 DISCUSSION
 

 Morales claims error with the district court’s failure to sever the two counts of possession by an ex-felon of a firearm, in contravention of our 1998 decision in
 
 Brown v. Stated.
 

 [3]
 

 We review decisions regarding severance of charges for an abuse of discretion.
 
 [4]
 

 In
 
 Brown,
 
 we adopted a procedure calculated to prevent prejudicial jury exposure to a defendant’s prior felony record in cases where the State joins an ex-felon firearm possession charge with
 
 *970
 
 other charges.
 
 [5]
 
 This procedure requires that district courts prospectively sever such matters by means of separate trials.
 
 [6]
 

 We conclude that the district court’s bifurcation procedure accomplishes the policy reflected in the prospective severance mandate declared in
 
 Brown.
 
 As with full severance, bifurcation prevents the State from discussing or producing proof of prior felony convictions until after the jury has deliberated on the charges that are unrelated to the defendant’s status as an ex-felon. Bifurcation also promotes judicial economy by allowing for adjudication of all charges in a single trial.
 
 [7]
 

 Jury instructions concerning the separate firearms charges
 

 Morales asserts further error in that, during the second phase of the trial, the district court verbally instructed jurors that they could convict him at that point of felony firearm possession upon the mere finding that he was an ex-felon. He also argues that the jury instructions failed to inform jurors that they must find each element beyond a reasonable doubt in order to convict.
 

 We discern no reversible error in either respect. First, the jury previously found beyond a reasonable doubt that Morales possessed a firearm during both incidents. Second, the district court explicitly instructed the jury concerning the necessary elements of possession of a firearm by an ex-felon and the requirement that the jury find the defendant guilty beyond a reasonable doubt on each element in order to reach verdicts of guilty. In this, instruction 32 given in the second trial phase provided that
 

 [a] person who has been convicted of a felony in this or any other state, or in any political subdivision thereof, or of a felony in violation of the laws of the United States of America, unless he has received a pardon and his right to bear arms has been specifically restored, shall not own or have in his possession or under his custody or control any firearm. Neither the concealment of the firearm nor the carrying of the weapon are necessary elements of the offense.
 

 “Firearm” includes any firearm that is loaded or unloaded and operable or inoperable.
 

 
 *971
 
 Further, instruction 33 provided in part that
 

 [t]he defendant is presumed innocent until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged and that the defendant is the person who committed the offense.
 

 Based on these instructions, we reject Morales’s claims that the jury was improperly instructed on the separate firearm offenses.
 

 Preclusion of defense witness testimony
 

 Morales argues that the district court erroneously denied his request to present, through his mother, alibi testimony regarding his whereabouts during the morning of the first incident. He also claims that the district court’s reason for denial — lack of timely notification to the State — was incorrect because the defense had apprised the prosecution of the witness two months before the commencement of trial proceedings. We disagree with both contentions.
 

 NRS 174.233(1) requires written disclosure to the State of a defendant’s intention to introduce alibi testimony at least ten days before trial, or at such other time required by the court. If a defendant fails to make timely disclosure, NRS 174.233(4) permits a court to exclude such alibi testimony, unless it is the testimony of the defendant himself. However, in
 
 Reese v. State,
 
 this court stated in dictum that preclusion of last-minute alibi testimony might constitute an abuse of discretion if requiring strict compliance with the statute would be unjust.
 
 [8]
 

 The defense below attempted to file the formal notice disclosing his mother’s testimony on the first day of trial, well after the statutory deadline. When defense counsel went on to contend that it had earlier apprised the prosecution regarding this testimony, the prosecutor responded with his previous understanding that Morales had, actually, decided to not present the testimony. The record on appeal reveals no assertion by Morales to the contrary. Accordingly, we discern no abuse of discretion in the district court’s preclusion of this testimony.
 

 Improper rebuttal closing arguments
 

 Morales asserts that the prosecutor committed misconduct in making comments during rebuttal closing argument to the effect
 
 *972
 
 that the presumption of innocence no longer applied at that point; that the only way the jury could have any doubt as to Morales’s guilt was if they were present during the crimes; and that, in responding to defense comments concerning production of evidence by the authorities, the prosecutor alluded to his faculty status at the police academy.
 

 To determine if prosecutorial misconduct was prejudicial, this court examines whether a prosecutor’s statements so infected the proceedings with unfairness as to result in a denial of due process.
 
 [9]
 
 In this, we must consider the context of such statements, and “ ‘a criminal conviction is not to be lightly overturned on the basis of a prosecutor’s comments standing alone.’ ”
 
 [10]
 
 Further, in cases where the state of the evidence is uncertain, it becomes especially important for the prosecution to avoid improper and inflammatory rhetorical comment.
 
 [11]
 

 Argument on the presumption of innocence
 

 The prosecutor stated that Morales was cloaked with a presumption of innocence at the beginning of trial but, because the State satisfied its burden in demonstrating that he committed the crimes, “there [was] no presumption of innocence anymore.” Although the defense lodged no objection to this comment, we may review plain error and constitutional error
 
 sua sponte.
 

 [12]
 

 We conclude that this argument rises to the level of plain error.
 
 [13]
 
 However, we conclude that this argument, alone, does not compel reversal. Nonetheless, we wish to caution Nevada prosecutors that this sort of argument is always improper.
 
 [14]
 
 A prosecutor may suggest that the presumption of innocence has been overcome; however, a prosecutor may never properly suggest that the presumption no longer applies to the defendant.
 

 
 *973
 

 Argument suggesting that the jury could have no doubt unless it was present during the crimes
 

 The prosecutor also stated in closing argument that the only way members of the jury could doubt Morales’s guilt was if they were present during the crimes. Morales also claims that the district court failed to cure this impropriety by issuing a special instruction to the jury. We conclude that this comment was wrong and improper and that, despite the defense’s timely objection and the action of the district court in sustaining the objection, this comment aggravated the impact of the other improper arguments made by the State in closing argument.
 

 Argument concerning the prosecutor’s instruction at the police academy
 

 At one point during his final remarks, the prosecutor mentioned that he was a teacher at the police academy. In this statement, made in response to an assertion by the defense that the police investigators failed to produce items allegedly in Morales’s possession at the time of the offenses, the prosecutor told the jury that one of the first lessons he teaches at the police academy is that an arrest does not automatically permit police to search an arrestee’s house or car.
 

 We agree with Morales that this argument was improper. This statement improperly suggests that the prosecutor possesses superior knowledge of the law due to his status as an instructor of police and police officer candidates.
 
 [15]
 
 We admonish the prosecutor to refrain from this sort of argument in the future.
 

 Cumulative error
 

 Pointing to the uncertainty of the evidence at trial, Morales claims that the accumulation of claimed errors in this case merits reversal. In this, he notes Joan Norman’s initial uncertainty in her ability to identify Morales as the offender because she only saw the offender’s profile obscured by a hooded jacket, and that she had consumed two to three alcoholic drinks just before the first incident. Morales likewise questions Fierch’s identification because Fierch selected a person other than Morales in the first of two photo line-ups. He further points to discrepancies between
 
 *974
 
 Morales’s claimed height and weight at the time of his arrest (5 feet, 8 inches; 170 pounds) and the height and weight of the subject as described by both Fierch (5 feet, 5 inches; 130 pounds) and Michael Eidson (5 feet, 6 inches; 140 pounds). Finally, Morales points to the lack of physical evidence linking him to the scenes of both crimes, such as fingerprint evidence.
 

 We conclude that the misconduct committed in this case constitutes cumulative error compelling reversal. The three improper arguments, that the presumption of innocence no longer applied to Morales, that jurors could have no doubt about Morales’s guilt unless they were present during the crimes, and the argument inviting undue jury reliance on the prosecutor’s veracity, were made in the context of a case marked by uncertain and equivocal eyewitness testimony. Moreover, given that eyewitness identification comprised the sole incriminating evidence against Morales, we cannot say that the errors committed in closing argument were harmless beyond a reasonable doubt.
 
 [16]
 

 CONCLUSION
 

 We conclude that the cumulative error committed in this case justifies reversal. Therefore, we reverse the judgment of conviction and remand for a new trial.
 

 Gibbons and Hardesty, JJ., concur.
 

 [1]
 

 114 Nev. 1118, 967 P.2d 1126 (1998).
 

 [2]
 

 For reasons unrelated to this case, Mr. Eidson died before trial. Therefore, the State introduced his preliminary hearing testimony.
 

 [3]
 

 114 Nev. 1118, 967 P.2d 1126.
 

 [4]
 

 Id.
 
 at 1124, 967 P.2d at 1130.
 

 [5]
 

 Id.
 
 at 1126, 967 P.2d at 1131.
 

 [6]
 

 Id.
 

 [7]
 

 Morales has not attacked the bifurcation below on the basis that either the State or the district court failed to provide safeguards against the jury becoming aware of his ex-felon status during the first phase of the trial.
 

 [8]
 

 95 Nev. 419, 423-24, 596 P.2d 212, 215-16 (1979) (concluding that the district court committed no abuse of discretion in precluding the testimony of the defendant’s parents offered on the day of trial).
 

 [9]
 

 Thomas
 
 v.
 
 State,
 
 120 Nev. 37, 47, 83 P.3d 818, 825 (2004).
 

 [10]
 

 Id.
 
 (quoting
 
 United States v. Young,
 
 470 U.S. 1, 11 (1985)).
 

 [11]
 

 See Emerson
 
 v.
 
 State,
 
 98 Nev. 158, 164, 643 P.2d 1212, 1216 (1982).
 

 [12]
 

 See Brown,
 
 114 Nev. at 1125, 967 P.2d at 1131.
 

 [13]
 

 See Green v. State,
 
 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (in undertaking plain error review, we examine whether an “error” occurred, whether the error was “plain” or clear, and “whether the error affected the defendant’s substantial rights”).
 

 [14]
 

 See Mahorney v. Wallman,
 
 917 F.2d 469, 473 (10th Cir. 1990);
 
 Pagano v. Allard,
 
 218 F. Supp. 2d 26, 33-34 (D. Mass. 2002) (concluding that similar commentary deprived the defendant of due process).
 

 [15]
 

 See Guy v. State,
 
 108 Nev. 770, 786, 839 P.2d 578, 588 (1992) (reasoning that a prosecutor’s invocation of authority through supposedly greater experience and knowledge invites undue jury reliance upon his personal conclusions).
 

 [16]
 

 See Chapman
 
 v. California, 386 U.S. 18, 24 (1967).