Filed 4/21/26  P. v. Garibay CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B342882 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA502430) |
| v. | |
| JOSE OROZCO GARIBAY, | ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed on March 25, 2026 be modified as follows:

1.  The paragraph commencing at the bottom of page 13 with "Nevertheless" and ending on page 14 with " ' follow my instructions' " is modified to read as follows:

Nevertheless, we reject Garibay's claim of ineffective assistance of counsel because he has failed to show prejudice, i.e., a reasonable probability that "the result would have been different" if his attorney had objected.

(*People v. Winn*, *supra*, 44 Cal.App.5th at p. 866.)  First, "we presume that the jury relied on the instructions, not the arguments, in convicting [the] defendant." (*People v. Morales* (2001) 25 Cal.4th 34, 47.)  Garibay notes correctly that this presumption is not conclusive, particularly where the conflict between the instructions and the prosecutor's argument is not obvious.  (See, e.g., *People v. Centeno* (2014) 60 Cal.4th 659, 676-677.)  But it remains relevant to the analysis that the jury instructions correctly stated the law regarding manslaughter under a heat-of-passion theory,[3] and that the court instructed the jury that "[i]f you believe that the attorneys' comments on the law conflict[] with my instructions, you must follow my instructions."

2.  On page 15, the first full paragraph beginning with "In addition" and ending with "react out of anger" is modified to read as follows:

More importantly, the evidence of provocation under the proper standard was weak.  We accordingly fail to see a reasonable probability that the result would have been different if Garibay's attorney had objected during the prosecutor's argument.  Although Propster grabbed Garibay on his way into the convenience store, Garibay was able to free himself and spent several minutes inside the store, where he appeared unperturbed as he picked out beer, waited in line, and left.  He then walked past Propster and Widjaja without incident on his way back to the truck.  Furthermore, although Propster was yelling threats, Garibay and his coworkers outnumbered Propster and Widjaja, and he never saw a weapon on either of them.  These factors were inconsistent with Garibay's testimony that he felt "scared" and "nervous," and that he "panicked."  Nor did Garibay claim that either Propster or Widjaja said anything to outrage him or cause him to react out of anger.

2

There is no change in the judgment. Appellant Garibay's petition for rehearing is denied.

_____
WEINGART, J.       ROTHSCHILD, P. J.       BENDIX, J.

Filed 3/25/26  P. v. Garibay CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE OROZCO GARIBAY,<br><br>Defendant and Appellant. | B342882<br><br>(Los Angeles County<br>Super. Ct. No. BA502430) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Charles Chung, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Defendant and appellant Jose Orozco Garibay fatally stabbed Seanna Widjaja in a fight outside a convenience store in Los Angeles. A jury convicted him of second degree murder (Pen. Code, § 187, subd. (a)),[1] and the trial court sentenced him to 16 years to life in prison. He challenges his conviction, arguing his attorney rendered ineffective assistance by failing to object to the prosecutor's statements during closing argument that, in Garibay's view, misstated the law on the presumption of innocence and the heat of passion doctrine for voluntary manslaughter. We find no prejudicial error and affirm.

## FACTUAL BACKGROUND

### A. Prosecution Case

Widjaja arrived at the convenience store just before 2:00 a.m. on January 15, 2022. He was accompanied by his girlfriend, Neysa Robinson, and his best friend, Chrystopher Propster, who was visiting for the weekend from San Diego. They had been drinking at home, then went to a couple of restaurants and bars in Koreatown where they had more drinks. They planned to buy beer at the convenience store and then go back to Widjaja's apartment.

Robinson was not sure how intoxicated Widjaja was when they arrived at the convenience store, but she described him as "very . . . mellow." Propster, on the other hand, was "clearly drunk" and had been trying to instigate fights with people.

Inside the store, Propster began arguing with three men, then followed them outside. Widjaja followed after Propster and tried to defuse the situation, but Propster got into a physical fight

_____

[1] Unspecified statutory references are to the Penal Code.

with the men despite Widjaja's efforts to restrain him. The men got into their car and left, leaving Propster visibly angry in the parking lot.

Just as the men were leaving, a white truck pulled into the parking lot, with Josue Alegria driving, Garibay in the passenger seat, and Damien Dehorney in the rear seat. The three men worked at a nearby restaurant and had just finished their shift. Alegria, who was the restaurant's lead chef, agreed to drive the others home. According to Alegria, some of the cooks at the restaurant brought their own knives to work each day.

Surveillance video footage showed Garibay getting out of the truck and walking toward the store. As he walked past Propster, Propster lunged at him. Garibay wrestled with Propster as Widjaja tried to separate the two. Alegria and Dehorney got out of the car and fought with Propster, and Widjaja held Garibay from behind trying to restrain him. Dehorney pulled Widjaja off of Garibay. Alegria told Garibay not to worry about Propster and Widjaja because "they're drunk," and to go inside and buy beer. While Garibay was inside, Propster continued to taunt Alegria, as Widjaja tried to restrain him. Alegria told Propster and Widjaja to leave, and told Propster he should not be drinking if he could not handle his liquor.

Propster said something like, "shut the fuck up. I'll fuck you up." At that point, Alegria put his fists up and said, "what's up then?" Alegria was hoping to scare Propster off. The surveillance video showed Widjaja trying to get between Propster and Alegria, when Propster swung at Alegria but missed. Alegria put his arm up and walked away, telling Propster he was too drunk. Alegria and Dehorney went back to their truck, where they waited for Garibay to return with the beer.

Garibay was inside the store for about a minute and a half, first waiting for a clerk to unlock the case containing the beer, then paying. Just before he left the store, Propster walked in front of Alegria's truck, and Alegria and Dehorney got out again. Garibay walked directly in front of Propster and Widjaja on his way back to the truck, but he did not interact with them. As Garibay handed the beer to Dehorney, Alegria went back toward the front door of his truck, but then Propster gestured at Alegria, as if to say goodbye, and continued taunting him. Alegria walked toward Propster, punched him in the face, and then backed away. The five men faced off, and Garibay held a pocketknife in his hand as he walked toward Propster and Widjaja.

Alegria told Garibay and Dehorney that they should leave, and they got back into the truck and prepared to drive away. But once again Propster started walking toward the truck. Alegria testified he was worried he might hit Propster with his truck as he drove away, so he got out and again yelled for Propster and Widjaja to get out of here. Widjaja was standing behind Propster with his hand around Propster's neck, but he let Propster go, and Propster punched Alegria, knocking his glasses off.

Alegria was focused on Propster and was not paying attention to Garibay's interaction with Widjaja. Widjaja had not been taunting or interacting with Alegria. Alegria punched Propster, who fell down, and Alegria managed to get Propster in a headlock. Dehorney came over to help, and he and Alegria punched and kicked Propster.

As Alegria was getting out of the truck, Garibay opened the door, but he hesitated, turned back toward the footwell, and emerged from the truck carrying a seven- or eight-inch kitchen knife. Widjaja moved toward Garibay, and Garibay brought the

4

knife down in a slashing motion. Widjaja attempted to grab hold of Garibay, and Garibay stabbed him multiple times. Widjaja fled inside the convenience store.

Alegria found his glasses on the ground, and he, Dehorney, and Garibay got back into the truck and drove away. According to Alegria, Garibay said nothing until Alegria dropped him off at his house.

Shortly after the stabbing, Robinson went inside the store, where she saw Widjaja behind the counter. He was struggling to breathe, and she could see one of his internal organs outside his body. An employee called 911. Paramedics arrived and took Widjaja to a hospital, where he died of his wounds.

A medical examiner testified that Widjaja suffered five stab wounds. The most severe wound was through his abdomen, which exposed his intestines, struck his liver, and punctured his vena cava, the largest vein in the body. This wound caused Widjaja to bleed out. A second wound went to the left side of Widjaja's chest. It collapsed Widjaja's lung and could have been fatal on its own. The remaining three wounds, on the lower left side of Widjaja's flank, on his hip, and on his upper back, were not fatal.

## B.     Defense Case

Garibay testified in his own defense. He stated that he started working as a dishwasher at the restaurant but then moved on to prep cook. He bought his own utensils, including a kitchen knife, which he carried in his backpack to and from work every day. He normally walked home, but on the night of the stabbing, Alegria asked if he wanted to grab some beers and offered to drive him home.

When they arrived at the convenience store, Alegria gave Garibay $20 to buy some beer before the store stopped selling alcohol at 2:00 a.m.  As Garibay got out of the truck, Propster ran up to him, grabbed him, and tried to pull him to the ground.  Widjaja grabbed Garibay's collar and would not let go.  One of the two told Garibay, "We're gonna fuck you up."

Eventually Garibay's coworkers helped him get free, and Alegria told him to go inside and get the beer.  When he exited the store, he saw Alegria and Dehorney outside the truck, and heard Alegria tell Propster and Widjaja to get out of there.  He walked back toward the truck and handed the beer to Dehorney.  As he did so, he heard one of the men say, "Let's go.  We'll fuck you up."

Soon after Garibay handed off the beer, Alegria punched Propster, and a scuffle ensued.  Garibay walked toward them holding a pocketknife, hoping to scare Propster and Widjaja and defuse the situation.  Garibay told the men to leave them alone.  Propster kept harassing and threatening them, and then Widjaja partially took off his jacket, which Garibay interpreted as meaning he wanted to fight.  Garibay testified that he felt "scared" and "nervous," and that he "panicked."

Garibay went back into the truck, believing Alegria was going to drive away.  He tossed his pocketknife into the backpack.  Then, Alegria got back out of the truck.  Garibay was "rummaging" through his backpack for the pocketknife, but he could not find it, so he took out the much larger kitchen knife instead.

As he got out of the truck, Garibay saw Propster fighting Alegria, and he became concerned for all of their safety.  Widjaja was standing behind Propster, but then Widjaja started

6

"charging" toward Garibay. Garibay backed up, but Widjaja grabbed him by his collar, his sweater, and his shirt. Garibay "panicked" and "just reacted." He remembered making two stabbing motions. Widjaja ran away, and Garibay believed he was okay. Alegria and Dehorney told Garibay to get into the truck, and they drove away.

On cross-examination, Garibay acknowledged that after he bought the beer, he walked past Propster and Widjaja without being attacked. He also admitted that the surveillance video showed he was still holding the pocketknife when he got back into the truck just before he emerged with the kitchen knife, contradicting his testimony that he threw the pocketknife inside the truck.

## DISCUSSION

Garibay contends his attorney rendered ineffective assistance by failing to object to comments the prosecutor made during closing argument suggesting that the presumption of innocence no longer applied to him, and to additional comments misstating the law on the mental state required for manslaughter under a heat-of-passion theory. To establish a claim of ineffective assistance of counsel, "the defendant must show [both] that counsel's representation fell below an objective standard of reasonableness" (*Strickland v. Washington* (1984) 466 U.S. 668, 688 [104 S.Ct. 2052, 80 L.Ed.2d 674]), and "that the deficient performance prejudiced the defense" (*id.* at p. 687). "To prove prejudice, [the defendant] bears the burden to show a reasonable probability that, but for his trial counsel's errors, the result would have been different. [Citation.] A reasonable probability is one ' "sufficient to undermine confidence in the outcome." ' " (*People v. Winn* (2020) 44 Cal.App.5th 859, 866.)

7

We reject Garibay's argument on the presumption of innocence because the prosecutor did not materially misstate the law on that subject. We reject his claim on heat-of-passion manslaughter because he has not demonstrated prejudice.

## A.     Presumption of Innocence

Garibay contends the prosecutor misstated the law by suggesting during closing argument the presumption of innocence no longer applied to him. The prosecutor stated as follows:

"Now, before you heard any evidence in this case, the judge read to you an instruction that said as the defendant sat here he was presumed innocent. Now that you've heard all the evidence, though, that has changed.

"You know, I can tell you right now, presume it's snowing outside. And then when you go outside on a break, you see that the sun is shining. I haven't been outside. I think it's shining. I know it's warm today. You go outside, you feel it's 80-plus degrees. You see it's not snowing. Doesn't really snow in L.A. The moment you see what it looks like outside and you feel that warmth, that presumption I told you about, to presume it's snowing, is now contradicted and you don't have to believe that presumption. And just as you saw here, all of the evidence, you heard all of the evidence, that presumption of innocence for the defendant has now been overturned and it has been contradicted by all of the evidence. He is now guilty of murder. Of the charges here."

It is of course a bedrock principle that "[a]bsent conviction of a crime, one is presumed innocent." (*Nelson v. Colorado* (2017) 581 U.S. 128, 130 [137 S.Ct. 1249, 197 L.Ed.2d 611].) Garibay cites cases from other jurisdictions holding that a prosecutor committed misconduct by stating during closing argument that

8

the presumption did not apply.  (E.g., *State v. Decker* (Kan. 2009) 202 P.3d 669, 675-676; *Morales v. State* (Nev. 2006) 143 P.3d 463, 467.)  Cases from other jurisdictions may be informative, but they are not binding.  Further, courts distinguish between genuine misstatements of the law and mere rhetorical flourishes.  In *People v. Booker* (2011) 51 Cal.4th 141 (*Booker*), our Supreme Court held that a prosecutor's argument fell in the latter category and rejected a claim of prosecutor error.  We therefore begin by focusing on *Booker*.

In *Booker*, the prosecutor told the jury during closing argument, "The defendant was presumed innocent until the contrary was shown.  That presumption should have left many days ago.  He doesn't stay presumed innocent."  (*Booker*, *supra*, 51 Cal.4th at p. 183.)  The defense counsel objected, and the court instructed the jury that " 'the presumption of innocence is the point at which you start the case.  At some point you come to the conclusion the person is guilty, the presumption is gone.' "  (*Id.* at pp. 183-184.)  The prosecutor then continued, " 'As the [c]ourt instructed you, I was correct, that the defendant starts out with the presumption of innocence.  That doesn't stay.  That isn't an automatic thing forever.  That's why we have a trial.  Once the evidence convinces you he is no longer innocent, that presumption vanishes.' "  (*Id.* at p. 184.)

The court found no error in these comments, describing them as "rhetorical restatements of the law as reflected in" the relevant statute and jury instruction.  (*Booker*, *supra*, 51 Cal.4th at p. 185.)  The Supreme Court in *Booker* relied on *People v. Goldberg* (1984) 161 Cal.App.3d 170, where "the Court of Appeal noted, 'Once an otherwise properly instructed jury is told that the presumption of innocence obtains until guilt is proven, it is

9

obvious that the jury cannot find the defendant guilty until and unless *they,* as the fact-finding body, conclude guilt was proven beyond a reasonable doubt.' (*Goldberg*, *supra*, . . . at pp. 189-190 . . . .) We agree. Although we do not condone statements that appear to shift the burden of proof onto a defendant (as a defendant is entitled to the presumption of innocence until the contrary is found by the jury), the prosecutor here simply argued the jury should return a verdict in his favor based on the state of the evidence presented." (*Booker*, *supra*, at p. 185.)

Garibay attempts to distinguish *Booker*, arguing that in that case, the trial court corrected the prosecutor's misstatement, and "[t]he prosecutor then adopted the correct view by arguing that the presumption of innocence vanishes only when the evidence convinces the jury that the defendant is no longer innocent." We do not see a meaningful difference between the "correct" statement in *Booker* and the allegedly incorrect view the prosecutor espoused in this case. In *Booker*, "[o]nce the evidence convinces you he is no longer innocent, that presumption vanishes." (*Booker*, *supra*, 51 Cal.4th at p. 184.) Here, the "presumption of innocence for the defendant has now been overturned and it has been contradicted by all of the evidence. He is now guilty of murder."

In addition, the court in *Goldberg* found no prosecutor error in a situation similar to this case despite no correction by the court. In that case, the prosecutor argued, " 'And before this trial started, you were told there is a presumption of innocence, and that is true, but once the evidence is complete, once you've heard this case, once the case has been proven to you—and that's the stage we're at now—the case has been proved to you beyond any reasonable doubt. I mean, it's overwhelming. *There is no more*

10

*presumption of innocence.* Defendant Goldberg has been proven guilty by the evidence. Thank you.' " (*People v. Goldberg, supra,* 161 Cal.App.3d at p. 189.) Garibay argues *Goldberg* was wrongly decided, but the Supreme Court cited *Goldberg* approvingly as the basis for its reasoning on this point in *Booker.* (See *Booker, supra,* 51 Cal.4th at p. 185.)

The prosecutor's comments in this case were perhaps inartful, but their commonsense interpretation was that, in the prosecutor's view, the evidence at trial was sufficient to overcome the presumption of innocence and prove Garibay guilty, not that the presumption of innocence did not apply at this stage in the proceedings. In addition, the court instructed the jury correctly on the presumption of innocence based on the CALCRIM No. 220 pattern instruction.[2] "We presume the jury understood and followed this instruction." (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 633.)

Because the prosecutor did not materially misstate the law regarding the presumption of innocence, Garibay's attorney did not render ineffective assistance by failing to object.

---

[2] The instruction read as follows: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. · You must not be biased against the defendant just because he has been arrest[ed], charged with a crime, or brought to trial.

"A defendant in a criminal case is presumed to be innocent. · This presumption requires that the people prove a defendant ·guilty beyond a reasonable doubt. · Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable [doubt]."

**B.	Heat of Passion**

"Manslaughter is a lesser included offense of murder" in which the defendant kills without malice. (*People v. Beltran* (2013) 56 Cal.4th 935, 942.) A jury may convict a defendant of manslaughter if it finds he acted in a heat of passion, "a mental state that precludes the formation of malice." (*Ibid.*) In *Beltran*, the Supreme Court held that for the heat-of-passion doctrine to apply, the defendant must act in response to a provocation that "would render an ordinary person of average disposition 'liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.'" (*Id.* at p. 957, quoting *People v. Logan* (1917) 175 Cal. 45, 49.) The court rejected the notion that "the provocation must be of a kind that would cause an ordinary person of average disposition *to kill*." (*Beltran*, *supra*, at p. 938.) This is because "society expects the average person not to kill, even when provoked. . . . However, if one *does* kill in this state, his punishment is mitigated. Such a killing is not justified but *understandable* in light of 'the frailty of human nature.' [Citation.] The killing reaction therefore is the *extraordinary* reaction, the unusual exception to the general expectation that the ordinary person will not kill even when provoked." (*Id.* at p. 949.)

Garibay argues his attorney rendered ineffective assistance by failing to object to several instances during the prosecutor's rebuttal argument when she misstated the law on heat-of-passion manslaughter. The prosecutor told the jury that "in order to be guilty of manslaughter in this case, under this heat of passion sudden quarrel [doctrine], there has to be provocation, and it has to be sufficient provocation. That's what the jury instructions say. It can't be slight and it can't be remote. It has to be

12

provocation that would cause an average person to kill somebody, to take another human being's life, to justify it.  The provocation here—I argue to you, there was no provocation. · And even if there was, it simply does not rise to the level where it would justify killing somebody, especially in this manner."

Later, the prosecutor noted that at one point in his testimony, Garibay said that he was "worried," and remarked, "[t]hat's not an intense or violent emotion that would cause you to kill."

Still later, the prosecutor asked the jury, "When and where [in the surveillance video] does [Widjaja] do this provocation that would rise to the level of justifying a killing?  A murder? · I didn't see it."  The prosecutor continued, noting that the sufficiency of provocation "largely hinges on a person of average disposition. When you're all deliberating and discussing this, you have to think for this—for a manslaughter, what would an average person do in this scenario, under these set of facts? · Would they kill? · Would an average person be so provoked that they would pull out a chef's knife and stab [Widjaja] five times? · In this scenario.  That is what the law says."

Shortly afterward, the prosecutor invited the jurors to "[t]hink of an average person you know, and then ask yourself would so-and-so murder [Widjaja] in . . . this situation if they were in that situation.  That is the standard here."

We agree with Garibay that the prosecutor misstated the law in these statements, and we can conceive of no strategic justification by a defense attorney to allow these statements to go unchallenged.

Nevertheless, we reject Garibay's claim of ineffective assistance of counsel because he has failed to show prejudice, i.e.,

a reasonable probability that "the result would have been different" if his attorney had objected.  (*People v. Winn, supra*, 44 Cal.App.5th at p. 866.)  First, "we presume that the jury relied on the instructions, not the arguments, in convicting [the] defendant."  (*People v. Morales* (2001) 25 Cal.4th 34, 47.)  The jury instructions correctly stated the law regarding manslaughter under a heat-of-passion theory,[3] and the court also instructed the jury that "[i]f you believe that the attorneys' comments on the law conflict[] with my instructions, you must follow my instructions."

---

[3] The court instructed the jury as follows, based on CALCRIM No. 570:  "A killing that would otherwise be murder is reduced to . . . voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion.

"The defendant killed someone because of a sudden quarrel or in the heat of passion if:

"1. The defendant was provoked;

"2. As a result of provocation the defendant acted rashly and under the influence of intense emotion that obscured reasoning or judgment; and

"3. The provocation would have caused a person of average disposition to act [rashly] and without due deliberation, that is, from passion rather than from judgment.

"Heat of passion does not require anger, rage, or any specific emotion.  It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.  In order for heat of passion to reduce murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation.  While no specific type of provocation is required, slight or remote provocation is not sufficient.  Sufficient provocation may occur over a short or long period of time."

14

In addition, the evidence of provocation was sufficiently weak that it failed to meet the proper test set forth in the jury instructions. We accordingly fail to see a reasonable probability that the result would have been different if Garibay's attorney had objected during the prosecutor's argument. Although Propster grabbed Garibay on his way into the convenience store, Garibay was able to free himself and spent several minutes inside the store, where he picked out beer, waited in line, and left. He then walked past Propster and Widjaja without incident on his way back to the truck. He testified that he felt "scared" and "nervous," and that he "panicked," but he was safe from any attack both while inside the store and in the truck. He could have stayed in either location rather than expose himself to additional risk. Furthermore, although Propster was yelling threats, Garibay and his coworkers outnumbered Propster and Widjaja, and he never saw a weapon on either of them. Nor did Garibay claim that either Propster or Widjaja said anything to outrage him or cause him to react out of anger.

Finally, Garibay claimed to have taken out the kitchen knife only after losing the pocketknife, but the video footage showed he had the smaller knife in his hand just before he retrieved the kitchen knife from the truck. Garibay got out of the truck armed with the chef's knife when Alegria and Propster were fighting hand to hand. Garibay started swinging the knife when Widjaja—who was unarmed and had consistently tried to restrain Propster and keep things from escalating further—began moving towards Garibay and the visible large knife he was carrying. These facts would have made the jury more inclined to believe he brought out the kitchen knife because of a considered plan to do violence, and to disbelieve his claims that he was

15

acting as a result of any provocation.  Nor did the jury likely believe Garibay's claim that he did not know Propster was drunk. Alegria testified that he knew this immediately, and told Propster he was drunk several times.  Because of this inebriated condition, Alegria did not perceive Propster or Widjaja as anything more than an annoyance, and it is unlikely any rational jury would have believed Garibay's claims that he was so frightened that he acted rashly and from passion in stabbing Widjaja even if defense counsel had objected to the prosecutor's misstatements.

## DISPOSITION

The judgment of the trial court is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

16