SAMAJA FUNDERBURK, AKA SAMAJA ELVIS FUNDER-
BURK, APPELLANT, *v.* THE STATE OF NEVADA,
RESPONDENT.

No. 49198

July 30, 2009 212 P.3d 337

*Amesbury & Schutt* and *John P. Parris, David C. Amesbury*, and
*Sandra L. Stewart*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *David J.
Roger*, District Attorney, *Steven S. Owens* and *Nancy A. Becker*,
Chief Deputy District Attorneys, and *Danielle K. Pieper*, Deputy
District Attorney, Clark County, for Respondent.

# OPINION

By the Court, HARDESTY, C.J.:

In this appeal, we address an issue of first impression: whether the definitions of "deadly weapon" set forth in NRS 193.165(6) are instructive on what constitutes a "deadly weapon" for burglary while in possession of a deadly weapon under NRS 205.060(4). Because the Legislature intended the definition of "deadly weapon" to be broad for purposes of NRS 205.060(4), we conclude that NRS 193.165(6)'s definitions are instructive for determining whether a weapon is a "deadly weapon" for purposes of NRS 205.060(4). Therefore, we determine that the district court did not err by instructing the jury that a BB gun constitutes a "firearm," as defined in NRS 202.265(5)(b),[1] a statute referenced in NRS 193.165(6)(c).

## FACTS AND PROCEDURAL HISTORY

On the evening of December 20, 2005, Samaja Funderburk and his co-assailant, Tucker Allen, entered a Burger King wearing hooded sweatshirts and masks over their faces. At least one of the men was carrying a gun—which was later determined to be a BB gun. After taking all of the cash and coin out of the safe, Funderburk and Allen instructed the employees to enter the walk-in refrigerator. After waiting for the assailants to leave, the employees exited the walk-in refrigerator and contacted the police.

On the evening of December 30, 2005, Funderburk and Allen, dressed in heavy winter clothing and ski masks, entered a McDonald's with a BB gun. Allen pointed the gun at the employees and said, "You know what this is"—meaning a robbery. After Funderburk and Allen emptied the registers and the safe, they left the establishment. The police were waiting outside and took both men into custody.

Funderburk and Allen were subsequently tried. On the final day of trial, the district court instructed the jury on Funderburk's robbery-with-the-use-of-a-deadly-weapon and burglary-while-in-possession-of-a-deadly-weapon charges. Jury Instruction No. 10 addressed the definition of a deadly weapon under the robbery and burglary charges:

> You are instructed that . . . "Firearm" includes:
>
> . . . .

---

[1]NRS 202.265(5)(b) defines "firearm" as "includ[ing] any device from which a metallic projectile, including any ball bearing or pellet, may be expelled by means of spring, gas, air or other force."

3. Any device from which a metallic projectile, including any ball bearing or pellet, may be expelled by means of spring, gas, air or other force.

*See* NRS 202.265(5)(b). The jury convicted Funderburk of various charges, including two counts of burglary while in possession of a deadly weapon under NRS 205.060(4). Funderburk challenges the deadly weapon element of his burglary-while-in-possession-of-a-deadly-weapon convictions.

## DISCUSSION

Funderburk contends that the district court erred by applying one of NRS 193.165(6)'s definitions of ''deadly weapon'' to his burglary-while-in-possession-of-a-deadly-weapon charges.[2] Specifically, Funderburk claims that applying NRS 193.165(6)'s definitions to his burglary charges contradicts the Legislature's intent because burglary, unlike other crimes such as robbery or murder, is not referenced in NRS 193.165, and the burglary statute instead has its own provision in NRS 205.060(4) that allows for an increased sentence when a person possesses a deadly weapon during the commission of a burglary.[3] We disagree and conclude that the Legislature intended the definition of ''deadly weapon'' to be broad for purposes of determining whether a defendant committed burglary while in possession of a deadly weapon under NRS 205.060(4). As a result, we are convinced that the district court did not err by instructing the jury on a definition set forth in NRS 193.165(6)(c) for Funderburk's burglary-while-in-possession-of-a-deadly-weapon charges.[4]

---

[2]NRS 193.165(6) provides:

As used in this section, ''deadly weapon'' means:

(a) Any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause substantial bodily harm or death;

(b) Any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death; or

(c) A dangerous or deadly weapon specifically described in NRS 202.255, 202.265, 202.290, 202.320 or 202.350.

[3]NRS 205.060(4) provides:

A person convicted of burglary who has in his possession or gains possession of any firearm or deadly weapon at any time during the commission of the crime, at any time before leaving the structure or upon leaving the structure, is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years, and may be further punished by a fine of not more than $10,000.

[4]Funderburk also asserts that NRS 193.165(6)'s definitions of ''deadly weapon'' are not applicable to his burglary charges because NRS 193.165 provides that its provisions (including its definitions) are not applicable to crimes

*Standard of review*

 ██

This court reviews a district court's decision settling jury instructions for an abuse of discretion or judicial error, *Brooks v. State*, 124 Nev. 203, 206, 180 P.3d 657, 658-59 (2008); however, whether the instruction was an accurate statement of the law is a legal question that is reviewed de novo. *Nay v. State*, 123 Nev. 326, 330, 167 P.3d 430, 433 (2007).

 ██

This court has stated that "a criminal statute must be strictly construed against the imposition of a penalty when it is uncertain or ambiguous." *Zgombic v. State*, 106 Nev. 571, 575, 798 P.2d 548, 551 (1990), *superseded by statute*, 1995 Nev. Stat., ch. 455, § 1, at 1431, *as recognized in Steese v. State*, 114 Nev. 479, 499 n.6, 960 P.2d 321, 334 n.6 (1998). When a statute or one of its provisions is uncertain, this court will look to the intent of the Legislature. *Id.* Moreover, this court will construe the statute "in a manner which avoids unreasonable results." *Id.*

*Legislative intent*

 ██

When the Legislature drafted NRS 205.060 in 1967, it did not include a deadly weapon enhancement provision. *See* 1967 Nev. Stat., ch. 211, § 138, at 494. Nonetheless, lower courts began enhancing burglary sentences under NRS 193.165 when the defendant possessed a deadly weapon during the commission of the burglary. *See Carr v. Sheriff*, 95 Nev. 688, 601 P.2d 422 (1979); *see also Frost v. Sheriff*, 95 Nev. 781, 602 P.2d 193 (1979). In response, this court addressed whether burglary sentences could be enhanced under NRS 193.165 for a defendant's use of a deadly weapon. In *Carr*, this court noted that NRS 193.165 authorizes a sentence enhancement if the defendant " 'uses a . . . deadly weapon in the commission of a crime.' " 95 Nev. at 690 n.2, 601 P.2d at 424 n.2 (quoting NRS 193.165(1)). This court concluded that because "[t]he offense of burglary is complete when the house or other building is entered with the specific intent designated in the statute[,] . . . [the] commission of the burglary . . . could not have been perpetrated with the *use* of a deadly weapon as contemplated by NRS 193.165." *Id.* at 689-90, 601 P.2d at 423-24 (citations omitted); *see also Frost*, 95 Nev. at 782, 602 P.2d at 194 (because burglary is complete upon

---

that require a deadly weapon as an element of the crime. Moreover, according to Funderburk, the district court's use of NRS 202.265(5)(b)'s definition of "firearm" was error because NRS 202.265(5) specifically states that its definitions relate only to the term as used in that statute. After careful consideration, we conclude that these claims are without merit.

entry of the dwelling, appellant could not have "used [the weapon] in the commission of the burglary"). Thus, under these holdings, a defendant's burglary sentence could not be enhanced if the defendant possessed a deadly weapon during the commission of the crime.

Nearly a decade after this court established that burglary sentences could not be enhanced under NRS 193.165, this court addressed what constituted a "deadly weapon" under NRS 193.165. *Clem v. State*, 104 Nev. 351, 760 P.2d 103 (1988), *overruled by Zgombic*, 106 Nev. 571, 789 P.2d 548. In *Clem v. State*, this court adopted the broadly applicable functional test for determining whether an instrument constituted a deadly weapon under NRS 193.165. *Id.* at 357, 760 P.2d at 106-07. Under the functional test, this court would look to "how an instrument is used and the facts and circumstances of its use." *Id.* at 357, 760 P.2d at 106.

After this court determined that burglary sentences could not be enhanced under NRS 193.165, *see Carr*, 95 Nev. at 689-90, 601 P.2d at 423-24, and shortly after this court adopted the broad functional test, the Legislature amended NRS 205.060 to include an increased sentencing range when a person has possession or gains possession of a "deadly weapon" during a burglary. *1989 Nev. Stat.*, ch. 568, § 1, at 1207. The Legislature, however, failed to define that term in the statute. *See id.* Additionally, there was no discussion during consideration of the amendment as to what constituted a "deadly weapon" for purposes of the increased sentencing range. *See, e.g.*, Hearing on A.B. 592 Before the Assembly Comm. on Judiciary, 65th Leg. (Nev., April 25, 1989); Hearing on A.B. 592 Before the Senate Comm. on Judiciary, 65th Leg. (Nev., June 13, 1989). Yet, the caselaw existent at the time that the Legislature amended NRS 205.060 demonstrates that the Legislature intended the new armed burglary provision to have broad applicability in terms of what constitutes a "deadly weapon."

Although the applicability of NRS 193.165(6)'s definitions was not at issue during the 1989 drafting of the armed burglary provision (because the Legislature did not add those definitions to NRS 193.165 until 1995, *see* 1995 Nev. Stat., ch. 455, § 1, at 1431), we determine that the existence of the *Clem* decision had considerable influence on the Legislature's enactment of the 1989 statute. *Clem*'s functional test was the applicable law to determine whether an instrument was a "deadly weapon" at the time that the Legislature adopted the armed burglary provision. Therefore, because the *Clem* functional test was the test for determining what constituted a "deadly weapon," we must assume that the Legislature drafted the armed burglary provision with that broad definition in mind. *Studebaker Co. v. Witcher*, 44 Nev. 442, 450, 195 P. 334, 336 (1921) ("It must be presumed that the [L]egislature of this state, when it

enacted the statute . . . had knowledge of the state of the law in regard to the subject-matter involved.''). And, because the Legislature did not define ''deadly weapon'' in its amendments to NRS 205.060, we conclude that the Legislature intended the term to have broad applicability.

As a result, we conclude that, based on the Legislature's intent, the definitions set forth in NRS 193.165(6) are instructive to determine what constitutes a ''deadly weapon'' under NRS 205.060(4). Therefore, we determine that the district court did not err by instructing the jury that a BB gun is a deadly weapon as it constitutes a ''firearm'' under NRS 202.265(5)(b), a statute referenced in NRS 193.165(6)(c).[5]

## CONCLUSION

We conclude that NRS 193.165(6)'s definitions are instructive for determining what constitutes a deadly weapon for enhancement purposes under NRS 205.060(4). Further, we determine that the district court did not err by instructing the jury on the definition of a ''firearm,'' as defined in NRS 202.265(5)(b), a statute referenced in NRS 193.165(6)(c). Accordingly, we affirm the judgment of conviction.

PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.

---

[5]Additionally, Funderburk alleges that the State failed to present sufficient evidence to support his conviction of robbery with the use of a deadly weapon regarding count 10. Having carefully reviewed this contention, we conclude that it does not warrant reversal. *See Brooks v. State*, 124 Nev. 203, 210, 180 P.3d 657, 661 (2008) (stating that a defendant uses a deadly weapon and is subject to an additional sentence when (1) the defendant is liable as a principal for the offense, (2) another principal used a deadly weapon during the commission of the crime, and (3) the defendant knew that the other used a deadly weapon).