131 Nev., Advance Opinion 99

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ERNESTO MANUEL GONZALEZ, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 64249 FILED DEC 3 1 2015 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of one count each of conspiracy to engage in an affray, carrying a concealed weapon, discharging a firearm in a structure, murder in the first degree with the use of a deadly weapon with a gang enhancement, and conspiracy to commit murder. Second Judicial District Court, Washoe County; Connie J. Steinheimer, Judge.

*Reversed and remanded.*

Richard F. Cornell, Reno,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Terrence P. McCarthy, Deputy District Attorney, Washoe County,
for Respondent.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, SAITTA, J.:

In the instant case, appellant challenges his conviction arguing that the district court abused its discretion when it refused to

15-40132

answer two questions from the jury during deliberations, when it gave a defense-of-others jury instruction that was unduly confusing and not supported by the evidence, when it refused to give his proffered accomplice-distrust jury instruction, and when it refused to bifurcate the gang-enhancement portion of the trial from the guilt phase. We agree with appellant in several respects and hold that in situations where a jury's question during deliberations suggests confusion or lack of understanding of a significant element of the applicable law, the judge has a duty to give additional instructions on the law to adequately clarify the jury's doubt or confusion. We also hold that, to provide the defendant with a fair trial, the guilt phase of trial must be bifurcated from the gang-enhancement phase. Because the district court failed to answer the jury's question regarding a significant element of conspiracy, refused to bifurcate the guilt and gang-enhancement portions of Gonzalez's trial, and committed other errors, we hold that the cumulative effect of these errors deprived appellant of his right to a fair trial. We therefore reverse Gonzalez's judgment of conviction and remand for a new trial.

*FACTUAL AND PROCEDURAL HISTORY*

In 2011, a brawl between members of two motorcycle gangs, the Vagos and the Hell's Angels, occurred in a Sparks casino. The fight was instigated by Stuart Rudnick, a member of the Vagos. During the fight, another member of the Vagos, appellant Ernesto Manuel Gonzalez, shot and killed Jethro Pettigrew, a member of the Hell's Angels.

Rudnick was initially charged as a coconspirator, but he pleaded guilty to reduced charges and ultimately testified against Gonzalez. Although Rudnick pleaded guilty prior to Gonzalez's trial, he was not sentenced until after he testified against Gonzalez. At trial, Rudnick testified that he and Gonzalez had a meeting prior to the fight

with the president of the international chapter of the Vagos. Rudnick further testified that the president put out a "green light" on Pettigrew, meaning that Pettigrew was to be killed, and that Gonzalez said he would kill Pettigrew. No other witnesses testified to the existence of this conspiracy to kill Pettigrew.

The jury found Gonzalez guilty on all counts. The district court merged the convictions of challenge to fight resulting in death with the use of a deadly weapon and second-degree murder with the conviction of first-degree murder with the use of a deadly weapon. Although the jury found the alleged deadly-weapon and gang enhancements, the district court only imposed sentences for the weapons enhancement. *See* NRS 193.169(1) (providing that additional enhancement sentence may be imposed for only one enhancement "even if the person's conduct satisfies the requirements for imposing an additional term of imprisonment pursuant to another one or more" of the enhancement statutes).

## DISCUSSION

On appeal, Gonzalez argues, among other claims, that the district court abused its discretion: (1) when it refused to answer two questions from the jury during deliberations, (2) when it gave a defense-of-others jury instruction that was unduly confusing and not supported by the evidence, (3) when it refused to give his proffered accomplice-distrust jury instruction, and (4) when it refused to bifurcate the gang-enhancement portion of the trial from the guilt phase.

*The district court's refusal to answer jury inquiries during deliberations*

This court reviews the refusal to respond to jury inquiries for an abuse of discretion. *Tellis v. State*, 84 Nev. 587, 591, 445 P.2d 938, 941 (1968).

During jury deliberations, a juror sent two questions to the district court judge. The first question stated:

> Legal question:
>
> Looking at Instruction no. 17: If a person has no knowledge of a conspiracy but their actions contribute to someone [else's] plan, are they guilty of conspiracy?

The second question stated:

> People in here are wondering if a person can only be guilty of 2nd degree murder or 1st. Can it be both?

Both Gonzalez's attorney and the State agreed that the answers to both questions were no. The district court refused to answer the first question, instead stating:

> It is improper for the Court to give you additional instruction on how to interpret Instruction no. 17. You must consider all the instructions in light of all the other instructions.

The district court also refused to answer the second question, stating:

> You must reach a decision on each count separate and apart from each other count.

*We create an exception to the rule in Tellis in situations where the jury's question suggests confusion or lack of understanding of a significant element of the applicable law*

The current law regarding a judge's duty to answer a jury's questions was promulgated in *Tellis*:

> The trial judge has wide discretion in the manner and extent he answers a jury's questions during deliberation. If he is of the opinion the instructions already given are adequate, correctly state the law and fully advise the jury on the procedures they are to follow in their deliberation,

SUPREME COURT
OF
NEVADA

(O) 1947A

> his refusal to answer a question already answered
> in the instructions is not error.

84 Nev. at 591, 445 P.2d at 941.

Here, because Gonzalez does not allege that the given jury instructions were inadequate or incorrectly stated the law, under our decision in *Tellis*, the district court did not abuse its discretion by refusing to answer the jury's questions. However, we are of the opinion that *Tellis* does not go far enough in describing a judge's duty to answer questions from the jury during deliberations.

We do not wish to completely overturn *Tellis*. However, we believe that there should be an exception to the bright-line rule in *Tellis* regarding situations where the jury's question suggests confusion or lack of understanding of a significant element of the applicable law. *See United States v. Southwell*, 432 F.3d 1050, 1053 (9th Cir. 2005) ("Because it is not always possible, when instructing the jury, to anticipate every question that might arise during deliberations, the district court has the responsibility to eliminate confusion when a jury asks for clarification of a particular issue." (internal quotations omitted)); *see also Harrington v. Beauchamp Enters.*, 761 P.2d 1022, 1025 (Ariz. 1988) (holding that when jurors "express confusion or lack of understanding of a significant element of the applicable law, it is the court's duty to give additional instructions on the law to adequately clarify the jury's doubt or confusion"); *State v. Juan*, 242 P.3d 314, 320 (N.M. 2010) ("[W]hen a jury requests clarification regarding the legal principles governing a case, the trial court has a duty to respond promptly and completely to the jury's inquiry."). In such situations, the court has a duty to give additional instructions on the law to adequately clarify the jury's doubt or confusion. *See Southwell*, 432 F.3d at 1053; *Harrington*, 761 P.2d at 1025; *Juan*, 242 P.3d at 320. This is

true even when the jury is initially given correct instructions. *People v. Brouder*, 523 N.E.2d 100, 105 (Ill. App. Ct. 1988); *see also Harrington*, 761 P.2d at 1025 (holding that the court has a duty to respond to the jury even when "the original instructions were complete and clear").

Here, the jury's question on conspiracy went to the very heart of that offense. Conspiracy is a knowing agreement to act in furtherance of an unlawful act. *Bolden v. State*, 121 Nev. 908, 912, 124 P.3d 191, 194 (2005). When a defendant does not know that he or she is acting in furtherance of an unlawful act, there can be no conspiracy. Because the jury's first question suggested confusion or a lack of understanding of this central element of the crime of conspiracy, we hold that the district court abused its discretion when it refused to answer the question. However, because the jury's second question did not suggest confusion or the lack of understanding of a significant element of first- or second-degree murder, the district court did not abuse its discretion when it refused to answer that question.

*The defense-of-others jury instruction*

Whether a jury instruction accurately states the law is reviewed de novo. *Funderburk v. State*, 125 Nev. 260, 263, 212 P.3d 337, 339 (2009). When the instruction concerns a defendant's right to self-defense, the issue is of constitutional magnitude. *See United States v. Sayetsitty*, 107 F.3d 1405, 1414 (9th Cir. 1997) (stating that "a defendant has a constitutional right to have the jury consider defenses [that] negate [criminal liability]"); *State v. Walden*, 932 P.2d 1237, 1239 (Wash. 1997) (indicating that an erroneous instruction on self-defense is an error of constitutional magnitude); *see also Harkins v. State*, 122 Nev. 974, 989-90, 143 P.3d 706, 716 (2006) (although not identifying the error as one of constitutional magnitude, reviewing whether an erroneous self-defense

jury instruction was harmless beyond a reasonable doubt, which is a review that is performed for constitutional errors). However, if the defendant did not object to an instruction, the instruction is reviewed for plain error. *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).

*The defense-of-others jury instruction improperly contained an instruction on self-defense that was not supported by the record*

> The trial court has the duty to instruct on general principles of law relevant to the issues raised by the evidence and has the correlative duty to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues. It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference.

*People v. Alexander*, 235 P.3d 873, 935 (Cal. 2010) (citations omitted) (internal quotations omitted).

Jury Instruction 34 states:

> The killing of another person in self-defense or defense of another is justified and not unlawful when the person who does the killing actually and reasonably believes:
>
> 1. That there is imminent danger that the assailant will either kill him or any other person in his presence or company or cause great bodily injury to him or any other person in his presence or company; and
>
> 2. That it is absolutely necessary under the circumstances for him to use in self-defense or defense of another force or means that might cause the death of the other person, for the purpose of avoiding death or great

bodily injury to himself or any other person in his presence or company.

A bare fear of death or great bodily injury is not sufficient to justify a killing. To justify taking the life of another in self-defense or defense of another, the circumstances must be sufficient to excite the fears of a reasonable person placed in a similar situation. The person killing must act under the influence of those fears alone and not in revenge.

An honest but unreasonable belief in the necessity for self-defense or defense of another does not negate malice.

The right of self-defense or defense of another is not available to an original aggressor, that is a person who has sought a quarrel with the design to force a deadly issue and thus through his fraud, contrivance, or fault, to create a real or apparent necessity for making a felonious assault.

However, where a person, without voluntarily seeking, provoking, inviting, or willingly engaging in a difficulty of his own free will, is attacked by an assailant, he has the right to stand his ground and need not retreat when faced with the threat of deadly force.

Actual danger is not necessary to justify a killing in self-defense or defense of another. A person has a right to defend from apparent danger to the same extent as he would from actual danger. The person killing is justified if:

1. He is confronted by the appearance of imminent danger which arouses in his mind an honest belief and fear that he or another in his presence, is about to be killed or suffer great bodily injury; and

2. He acts solely upon these appearances and his fear and actual beliefs; and

> 3. A reasonable person in a similar situation would believe himself or another in his presence to be in like danger.

The killing is justified even if it develops afterward that the person was mistaken about the extent of the danger.

If evidence of self-defense, or defense of others is present, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense or defense of others. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense or defense of others, you must find the defendant not guilty.

Thus, the defense-of-others instruction contained both an instruction on defense of others *and* an instruction on self-defense. However, Gonzalez never attempted to assert that he acted in self-defense when he shot Pettigrew, and the evidence in the record does not support that defense. No evidence was submitted at trial to support a finding that Gonzalez was in, or believed he was in, imminent danger of serious bodily harm or death when he shot Pettigrew. *See* NRS 200.200 (defining self-defense). Therefore, we hold that because the included self-defense instruction was irrelevant to the issues raised by the evidence and had the effect of confusing the jury, it was erroneous. *See Alexander*, 235 P.3d at 935.

*Intertwining the self-defense and defense-of-others instructions was unduly confusing to the jury*

Jury instructions that are unduly confusing may be erroneous. *United States v. Kalama*, 549 F.2d 594, 596 (9th Cir. 1976).

Here, instructions on self-defense and defense of others were bizarrely combined into a single instruction in a way that could be confusing to the jury. By intertwining the two defenses, the instruction

was made unwieldy and unnecessarily confusing for the jury who was then expected to untangle the resulting amalgamation. It could also have misled the jury as to what defense Gonzalez was actually asserting. Therefore, we hold that because the defense-of-others instruction was unduly confusing, it was erroneous.

*The district court did not commit plain error*

However, Gonzalez failed to object to the defense-of-others jury instruction. Therefore, we must review this instruction for plain error. *See Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).

Plain error review considers "whether there was 'error,' whether the error was 'plain' or clear, and whether the error affected the defendant's substantial rights." *Id.* Here, while we find that the given defense-of-others instruction was erroneous, we are not convinced that it amounted to plain error. The given jury instruction, while confusing, does not appear to be an incorrect statement of Nevada law. Therefore, we hold that the district court did not commit plain error by giving its defense-of-others jury instruction.

*The district court abused its discretion by refusing to give an accomplice-distrust instruction*

The district court is required to give a cautionary jury instruction when an accomplice's testimony is uncorroborated. *Howard v. State*, 102 Nev. 572, 576, 729 P.2d 1341, 1344 (1986). If the testimony is corroborated, a cautionary instruction is favored, but failure to grant it is not reversible error. *Id.* An accomplice-distrust instruction "advises the jury that it should view as suspect incriminating testimony given by those who are liable to prosecution for the identical charged offense as the accused." *Riley v. State*, 110 Nev. 638, 653, 878 P.2d 272, 282 (1994).

At trial, Gonzales proffered the following jury instruction with regard to the State's witness, Rudnick:

> You have heard testimony from _____, a witness who had criminal charges pending against him. That testimony was given in the expectation that he would receive favored treatment from the government in connection with his case;
>
> For this reason, in evaluating the testimony of _____, you should consider the extent to which or whether his testimony may have been influenced by this factor. In addition, you should examine the testimony of _____ with greater caution than that of other witnesses.

The district court rejected the instruction, stating that it was "unnecessary given [the jury instruction on the duty of weighing the witnesses' credibility]" and it is "inappropriate to single out any one witness, especially in a case where most of the witnesses, the lay witnesses certainly had interests other than solely being a lay witness here."

The district court is incorrect in its belief that it is inappropriate to single out any one witness as less reliable than others. That is, in fact, the entire purpose behind our requirement that an accomplice-distrust instruction be given when the accomplice's testimony is uncorroborated. *See Riley*, 110 Nev. at 653, 878 P.2d at 282. Here, it is uncontroverted that Rudnick was an accomplice of Gonzalez's because they were both charged with conspiracy to commit the same murder. Therefore, if Rudnick's testimony was uncorroborated, the district court

SUPREME COURT
OF
NEVADA

(O) 1947A

was required to give an accomplice-distrust jury instruction as to his testimony, and failure to do so was error.[1]

*Rudnick's testimony was uncorroborated*

The State argues that because Rudnick's testimony was partially corroborated by such things as the casino video of Gonzalez shooting Pettigrew, a cautionary instruction was not required. While it is true that parts of Rudnick's testimony were corroborated by the casino's video recordings of the fight between the Vagos and Hell's Angels and the subsequent killing of Pettigrew by Gonzalez, Rudnick's testimony about the alleged conspiracy, which formed the basis for several of Gonzalez's convictions, was uncorroborated by any other witnesses or evidence.

Furthermore, one of the central issues in this case was whether Pettigrew's death was part of a premeditated conspiracy or occurred in the course of a spontaneous clash between two biker gangs. It would be absurd to conclude, as the State urges, that because some of an accomplice's testimony is corroborated by video that is publicly known to

---

[1]We agree with the State that Gonzalez's proffered jury instruction was broader than the typical accomplice jury instruction in that it cautioned the jury against the testimony of any person with criminal charges pending against them in exchange for favorable treatment, and not just accomplices. A more appropriate instruction would be one similar to that proffered in *Howard*. 102 Nev. at 576, 729 P.2d at 1344 ("The testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with care and caution and in light of all the evidence in the case." (internal quotations omitted)). However, the district court nonetheless has "an affirmative obligation to cooperate with the defendant to correct the proposed instruction," *Carter v. State*, 121 Nev. 759, 765, 121 P.3d 592, 596 (2005) (internal quotations omitted), and the failure to do so in the case of an accomplice-distrust instruction is error.

exist and is uncontroverted by the defendant, the entirety of the accomplice's testimony is considered to be corroborated for the purposes of *Howard*. Therefore, we hold that because material portions of Rudnick's testimony were uncorroborated, the district court abused its discretion by refusing to give an accomplice-distrust instruction.

*The district court abused its discretion by refusing to bifurcate the presentation of gang-enhancement evidence from the guilt phase of the trial*

We normally review decisions regarding bifurcation of enhancement portions of a trial for an abuse of discretion. *See People v. Hernandez*, 94 P.3d 1080, 1085 (Cal. 2004) (reviewing district court's refusal to bifurcate gang-enhancement portion of trial from guilt phase for abuse of discretion). However, we have held that in situations where a failure to bifurcate compromises a defendant's right to a fair trial, bifurcation is mandatory. *See Brown v. State*, 114 Nev. 1118, 1126, 967 P.2d 1126, 1131 (1998) (holding that severance is mandatory in multicount indictments where one count is of possession of a firearm by an ex-felon); *see also Morales v. State*, 122 Nev. 966, 970, 143 P.3d 463, 465 (2006) (holding that bifurcation procedure accomplishes the same policy goals as the severance mandated in *Brown*).

"[I]nstitutional values such as judicial economy, efficiency, and fairness to criminal defendants often raise competing demands." *Brown*, 114 Nev. at 1126, 967 P.2d at 1131. However, in balancing these demands, ensuring that a defendant's right to a fair trial is not compromised is paramount. *Id.* We have previously held that when the State seeks convictions on multiple counts, including a count of possession of a firearm by an ex-felon, the prejudice to the defendant of introducing evidence of prior convictions in order to establish that the defendant is an ex-felon requires the severance of the counts. *Id.*

The State attempts to distinguish *Brown* from the current case by alleging that evidence of a prior conviction is uniquely prejudicial. However, we are not so certain. Is evidence of a prior conviction more prejudicial than the evidence presented here by a gang expert—namely, that Gonzalez was a member of a criminal gang whose members in Arizona commonly sell narcotics, possess stolen property, and commit assault and homicide? Is it more prejudicial than the evidence presented by another gang expert that Gonzalez is a member of a criminal gang that moves firearms, tries to set up robberies on dope dealers, tries to extort motorcycles from people, traffics in narcotics, and commits rape? This, among other highly prejudicial evidence used to prove the existence of a criminal gang, is a type of evidence that would generally not be admissible during a guilt phase of a trial but is statutorily admissible in order to prove a gang enhancement. *See* NRS 193.168(7)(a)-(g).

This is not to say that evidence of gang affiliation is not still admissible for other purposes, such as to show motive. *See Butler v. State*, 120 Nev. 879, 889, 102 P.3d 71, 78 (2004) ("This court has repeatedly held that gang-affiliation evidence may be relevant and probative when it is admitted to prove motive."). However, such evidence will not be admissible in the guilt phase of a trial solely for the purpose of proving a gang enhancement. Here, while some of the evidence admitted to prove the gang enhancement would have also been admissible for other purposes in Gonzalez's trial, other evidence, such as the evidence discussed above of the types of crimes commonly committed by members of the Vagos, would not have been. Although the gang enhancement in this case was ultimately not imposed, the admittance of this evidence allowed the State

to tie Gonzalez to unrelated crimes committed by other members of the Vagos.

Therefore, because the admission of highly prejudicial evidence to prove a gang enhancement that would not otherwise be admissible to prove the underlying crime compromises a defendant's right to a fair trial, we hold that the guilt phase of a trial must be bifurcated from the gang-enhancement phase. Thus, we conclude that the district court abused its discretion by refusing to bifurcate the guilt and gang-enhancement portions of the trial.

*Cumulative error*

"[I]f the cumulative effect of errors committed at trial denies the appellant his right to a fair trial, this court will reverse the conviction." *DeChant v. State*, 116 Nev. 918, 927, 10 P.3d 108, 113 (2000). "Relevant factors to consider in deciding whether error is harmless or prejudicial include whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged." *Id.* (internal quotations omitted).

Here, the errors directly affected Gonzalez's convictions for conspiracy and, by extension, undermined his affirmative defense that he was acting in defense of others. Furthermore, the crimes he was convicted of were grave. Therefore, we hold that the cumulative effect of these errors has denied Gonzalez the right to a fair trial.

## CONCLUSION

The district court abused its discretion when it refused to answer the jury's question that suggested the jury was confused or lacked understanding of a significant element of conspiracy to commit murder. It also abused its discretion when it refused to give an accomplice-distrust instruction regarding Rudnick's uncorroborated testimony and refused to

SUPREME COURT
OF
NEVAOA

(O) 1947A

15

bifurcate the guilt and gang-enhancement phases of Gonzalez's trial. Therefore, because the district court's errors cumulatively denied Gonzalez of his right to a fair trial, we order his judgment of conviction reversed and remand to the district court for a new trial.[2]

_____, J.
Saitta

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

---

[2]Because we hold that the district court's errors discussed above were enough to cumulatively warrant reversal, we do not reach the other issues raised by Gonzalez.